UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TRACY L. LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RON RICHARDSON, | ) | 1:13-cv-01250-SEB-DML |
| SHELLY, | ) | |
| TYLER JUGG, | ) | |
| R. PERKINS, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY DENYING MOTION TO DISMISS AND
DIRECTING FURTHER PROCEEDINGS**

This cause is before the Court on Defendants' Motion to Dismiss, filed on October 14, 2013. [Dkt. 19]. Plaintiff Tracy Lawrence has brought claims against Defendants for violating his right to be free from cruel and unusual punishment under the Fourteenth Amendment and 42 U.S.C. § 1983 as well as for battery and denial of reasonable medical care under Indiana tort law. Compl. ¶¶ 2–5. Defendants claim that Plaintiff did not exhaust his administrative remedies and therefore his claims against defendants under 42 U.S.C. § 1983 should be dismissed for failure to exhaust those remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e). Defendants also call for dismissal of the remaining state law claims without prejudice for lack of pendant jurisdiction. Defs.' Mot. ¶¶ 2, 5.

**Factual Background**

Plaintiff alleges that on December 29, 2011, while incarcerated at the Madison County Jail, he was attacked by officers Tyler Jugg and Robert Perkins. Lawrence Aff. ¶¶ 2–3. During the attack, Officer Jugg repeatedly punched him in the face while Officer Perkins held his arms

1

and one of the officers "slammed their knee into [his] spine" while he was handcuffed. *Id.* at ¶ 3. As a result of the attack, he claims to have suffered a number of injuries to his jaw, back, tailbone, and face—resulting in occasional numbness in his fingers and toes. *Id.* Following the incident, Plaintiff was taken to a "rubber room" where he was kept for "about two weeks." *Id.* at ¶ 4. While housed in the "rubber room," he requested medical attention but was dissatisfied with the jail's response, claiming that the jail's nurse only checked his reflexes and listened to his heart without assessing or treating his injuries. *Id.*

Throughout December 2011 and January 2012, the Madison County Jail had in effect a written grievance policy for use by inmates which provided for two levels of appeal from an initial grievance response. Williams Aff. ¶ 2. Under the policy, "[a]n inmate may file a grievance concerning any incident or conditions or confinement in the Madison County Detention Center." Williams Aff. Ex. 1, at 1. The grievance must describe the incident, including the date, time, and location as well as the identity of all persons involved. *Id.* It must also be submitted within ten days of the incident. *Id.* "Grievances submitted beyond this time frame will not be accepted." *Id.* If the inmate is dissatisfied with the jail's response to the grievance or does not receive a response within ten days, he may appeal to the Jail Commander. *Id.* This appeal "must be in writing and clearly set forth all grounds for the inmate's disagreement with the response." *Id.* It must also be submitted within five days of the prisoner's receipt of the initial response. *Id.* "Failure to submit any appeal will result in the default of the appeal." *Id.* If the inmate is still dissatisfied with the Jail Commander's response or does not receive a response within fifteen days of the appeal, he may lodge a second appeal with the Sheriff. *Id.* at 2. "Any appeal to the Sheriff must be in writing and set forth all grounds for the inmate's disagreement with the jail commander's response," and, again, it must be submitted within five days of the

date of receipt of the Jail Commander's response to the appeal. *Id.* "Failure to submit any appeal to the Sheriff within the applicable time period will result in the default of the appeal." *Id.* The written grievance policy concludes by requiring that "[a]ll Grievance Procedures must be properly exhausted prior to any tort or civil claims against the Sheriff, the Jail, or Madison County." *Id.*

The grievance policy along with a complete copy of Inmate Rules and Regulations was provided to the inmates in each cell block of the Madison County Jail via slideshow on Channel 7 of the dayroom televisions.[1] Williams Supp. Aff. ¶ 2. For two months prior to the alleged incident—from October 29 to December 29, 2011—Plaintiff was housed in general population with full access to these television slideshows. *Id.* at ¶ 5. On December 29, the date of the alleged incident, Plaintiff was in lockdown. *Id.* While in lockdown, Plaintiff had access to the dayroom for one hour a day. *Id.* at ¶ 4.

Plaintiff claims to have filed three separate written grievances while incarcerated in the Madison County Jail: the first concerned the attack itself; the second concerned the lack of medical care and attention he received; and the third concerned his placement and duration in "lockdown." Lawrence Aff. ¶ 5. Further, Plaintiff claims that he was never provided copies of his grievances, written responses to his grievances, or any paperwork allowing him to file any appeals. *Id.* at ¶¶ 5–6.

In addition to submitting written grievances, Plaintiff sent an email using a jail kiosk in January 2012 requesting to speak with the Jail Commander and the Jail Commander's boss.[2]

---

[1] A copy of the slide show that was displayed on the dayroom televisions is attached to the Williams Supplemental Affidavit as Exhibit 1.

[2] Defendants concede that the email correspondence satisfied the initial requirement that the grievance be in writing. Defs.' Reply at 1. The date provided on the printed correspondence is January 27, 2012, 29 days after the alleged

3

Williams Aff. ¶ 5, Ex. 2. The Jail Commander, Andy Williams, responded to the email by requesting that Plaintiff provide a description of the nature of his request; Plaintiff responded by informing Williams that officers had "attacked" him; Plaintiff also requested to speak to Williams's boss. *Id.* Williams asked Plaintiff to put his complaint in writing so he could review it; Plaintiff responded that he had been "locked down" for fifty-five days and "put in a freezing cell for two weeks." He again requested to speak with Williams' boss. *Id.* In response, Williams explained to Plaintiff that the Sheriff would not speak with Plaintiff "without some reason," and that based on the correspondence thus far, Williams was "still not sure what the complaint is." *Id.* In the final exchange between the two, Plaintiff stated that he was "upset at the the [sic] fact that your officers attacked me for no reason at all and injured [m]y back." He requested once more to speak to Williams's boss and indicated his intention to "go to court" and "talk [with] the judge." *Id.* Following the email correspondence, Plaintiff filed no written appeal concerning the response(s) he received from the email correspondence. *Id.* at ¶ 9.

On August 6, 2013, Plaintiff filed his complaint in this court alleging violations of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, and for battery under Indiana tort law, alleging that, while incarcerated at the Madison County Jail: (1) he was subjected to excessive and unreasonable force; (2) a jail nurse denied him adequate medical care for his injuries; and (3) the policies, practices, and procedures in effect at the jail pertaining to the use of force and provision of medical care were deficient. Compl. ¶¶ 3–12.

On October 14, 2013, Defendants moved to dismiss the Complaint claiming that Plaintiff had failed to exhaust the procedures outlined in the jail rules and policies regarding grievances

---

attack; however, Plaintiff claims the correspondence took place in several exchanges between January 3, 2012, and January 27, 2012. Pl.'s Resp. at 3.

and appeals, and therefore his claims against Defendants under 42 U.S.C. § 1983 are subject to dismissal for failure to exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), and the remaining state law claims should be dismissed without prejudice for lack of pendant jurisdiction. Defs.' Mot. ¶¶ 2, 5.

## **Legal Standard**

A defendant may file a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss a claim when the plaintiff is not entitled to the relief being sought due to insufficiencies in the nature of the claim. Because Defendants have presented matters outside pleadings to support its motion, we treat it as one for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d). *See Grant v. U.S. Dep't of Hous. & Urban Dev.*, 2013 WL 2285568, at *1 (S.D. Ind. May 23, 2013).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed .R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.,* 477 U.S. at 323. In determining the existence of a genuine issue of material fact, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Anderson,* 477 U.S. at 255. The Seventh Circuit has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before

them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). The "material fact" at issue here preliminarily is whether Plaintiff succeeded in exhausting his administrative remedies priot to filing his complaint in our court. **That must be resolved before addressing the merits.**

## Discussion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); s*ee Porter v. Nussle,* 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. The exhaustion requirement of the PLRA is one of "proper exhaustion" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 84 (2006). "This means that the prisoner plaintiff must have completed the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Stokes v. Secrest*, 2014 WL 2777292, at *4 (S.D. Ind. June 19, 2014) (internal quotes omitted); s*ee also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (explaining that the Seventh Circuit has adopted a "strict compliance" approach to exhaustion).

### I.  Unavailability of Remedies

"The exhaustion requirement serves legitimate purposes, but it is not intended to give authorities the opportunity to create insurmountable obstacles to lawsuits that may be essential to protect constitutional and other legal rights." *Lampkins v. Roberts*, 2007 WL 924746, at *2 (S.D. Ind. Mar. 27, 2007) (citing *Woodford,* 548 U.S. at 84). Thus, while strict compliance is required

6

with respect to exhaustion, a prisoner is only required to exhaust those remedies that are available to him. *Britt v. Rahana*, 2014 WL 1871018, at *1 (S.D. Ind. May 8, 2014)(citing *Dole*, 438 F.3d at 809). Failure to exhaust is an affirmative defense under the PLRA, so it is Defendant's burden here to prove Plaintiff has not exhausted available administrative remedies. *McCarroll v. Marberry*, 2010 WL 1257492, at *2 (S.D. Ind. Mar. 24, 2010) (citing *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005)). The specific question before us then is whether the grievance procedure which sets out the administrative exhaustion structure was actually "available" to plaintiff.

### A. Lack of Evidence Explaining How the Inmates were Made Aware of the Grievance Policy

"A grievance procedure which is not made known to inmates is not an 'available' administrative remedy." *Arreola v. Choudry*, 2004 WL 868374, at *2 (N.D. Ill. Apr. 22, 2004); *see also Wilson v. Payne*, 2014 WL 1347091, at *3 (S.D. Ind. Apr. 4, 2014) (finding a Plaintiff who claimed that he never received a copy of the jail procedures and therefore did not know what was required to exhaust his administrative remedies, was "thwarted" in his attempt to complete the grievance process.) "[A]n institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it." *Hall v. Sheahan,* 2001 WL 111019, at *1 (N.D. Ill. Feb. 2, 2001). Thus, when administrative remedies are effectively made unavailable by the inaction of prison officials, the prisoner may file suit without pursuing those unavailable remedies to conclusion.

The Seventh Circuit's decision in *Conyers v. Abitz,* 416 F.3d 580 (7th Cir. 2005), is instructive here. The plaintiff in *Conyers* was a Muslim prisoner who was not permitted to observe Ramadan. Prison officials denied his request to participate in the fast because he had not signed up by the deadline. He sued for denial of his right to exercise his religion and the Seventh

7

Circuit reversed summary judgment for defendants because, while the evidence showed that prison officials had planned for Ramadan by posting a bulletin telling Muslim prisoners they would need to sign up for special meals no later than a specified date before Ramadan began, the evidence also showed that he did not know about the posted deadline because he was in disciplinary segregation and could not see it. *Id.* at 582–83. Based on these facts, the Seventh Circuit prevented enforcement of a deadline against a plaintiff who was clearly unaware of it. *Id.* at 585–86.

The approach in *Conyers* is consistent with other Seventh Circuit decisions under the PLRA, all recognizing that jail and prison officials can by their action or inaction make an administrative remedy "unavailable." *See e.g., Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).

Here, Plaintiff maintains that he was never informed of the details of the Madison County Jail's grievance policy or provided with any necessary forms to file appeals. Pl.'s Resp. at 4. In response, Defendants rely on the fact that the grievance policy was available to Plaintiff because it was provided to all the inmates in each cell block via slideshow on Channel 7 of dayroom televisions. Williams Supp. Aff. ¶ 2. However, Plaintiff's other assertions remain largely unanswered; it remains unexplained how individual inmates of the jail, including Plaintiff, were informed that the television broadcasts provided the sole source of information regarding the grievance policy, nor is there evidence to show that the inmates were informed that they must tune the televisions to Channel 7 to access the relevant slideshow. Defendants fail to explain how, when, or where inmates are apprised of the details for compliance with the grievance policy, or even how to access the policy. No evidence suggests or proves that Plaintiff was ever directed to Channel 7 before or after reported to the Jail Commander the alleged attack against

him. Defendants merely argue that "[s]ince Plaintiff was submitting multiple grievances in the jail…it was *believed and assumed* that [P]laintiff knew the jail grievance policy." Defs.' Reply at 2 (emphasis added). As in *Conyers*, although the jail officials here may have posted the policy for the inmates, there is no evidence to establish that Plaintiff actually saw the policy or in fact knew where or how to access it. 416 F.3d at 582–83.

Thus, Defendants have failed to sustain their burden to show that Plaintiff was aware of the jail's grievance policy, or how to access it.

### B. Lack of Evidence Regarding the Three Separate Written Grievances

A remedy for a prison grievance can also become "unavailable" if prison employees do not respond to a properly filed grievance or otherwise engage in affirmative misconduct that prevents a prisoner from exhausting his remedies. *Dole*, 438 F.3d at 809; *see e.g., Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002) (grievance procedure was unavailable due to officials' failure to respond to grievances); *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004) (grievance procedure was unavailable where prison officials refused prisoner's request for required grievance forms). In such cases, a prisoner will be deemed to have exhausted "available" administrative remedies if it is shown that prison officials ignored, obstructed, or mishandled the grievance filed or sought to be filed by the prisoner. *Dole*, 438 F.3d at 813.

Here, Plaintiff claims to have filed three separate written grievances while incarcerated in the Jail: the first concerned the attack itself; the second concerned the lack of medical care and attention he received; and the third concerned his detention in lockdown as well as the duration of his time there. Lawrence Aff. ¶ 5. Plaintiff further claims that he was never provided copies of his grievances, written responses to his grievances, or any paperwork that would allow him to file grievance appeals. *Id.* at ¶¶ 5–6. According to Plaintiff, it was "in addition to submitting

[these] written grievances, [that he] took additional steps…to have the attack itself addressed and reviewed" by exchanging email correspondence with the Jail Commander, Andy Williams. Pl.'s Resp. at 3. Defendants' response is insufficiently terse, focusing exclusively on the email correspondence between Plaintiff and Andy Williams in arguing that this correspondence by itself does not comply with the jail's grievance policy. In their Reply Brief, Defendants concede that, "It is uncontradicted that Plaintiff's alleged assault took place on December 29, 2011, and that the only grievance Plaintiff submitted thereto was the kiosk correspondence attached as exhibit 2 to the original affidavit of jail commander Andy Williams." Defs.' Reply at 1. Far from being "uncontradicted," this statement directly conflicst with Plaintiff's affidavit averring that he had filed three separate written grievances. We do not weigh conflicting evidence or attempt to resolve this question of fact at this stage of the proceedings. *Wilson v. Payne*, 2014 WL 1347091, at *3 (S.D. Ind. Apr. 4, 2014) (citing *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). The conflicting factual assertions between the parties undermine Defendants' efforts to establish that no genuine issue as to any material fact exists and that they are entitled to judgment as a matter of law.

**Conclusion**

Plaintiff has established the existence of a genuine issue of fact regarding whether administrative remedies had been made available to him with regard to processing his grievances, and whether he is entitled to be considered to have exhausted them under the PLRA. Accordingly, Defendants' Motion to Dismiss is DENIED.

The Seventh Circuit instructs district court judges, when exhaustion is contested under the PLRA, to "conduct[ ] a hearing on exhaustion and permit[ ] whatever discovery relating to exhaustion [they deem] appropriate." *Pavey v. Conley*, 528 F.3d 494, 497–98 (7th Cir. 2008). In

compliance with this procedure, the parties are permitted thirty (30) days within which to conduct additional discovery on the issue of exhaustion of administrative remedies. Before addressing the merits of this case, if the issue of exhaustion remains in dispute between the parties, a hearing will be conducted by the Court consistent with the requirements and procedures outlined in *Pavey*. The parties should inform the Court accordingly.

    IT IS SO ORDERED.

Date: 07/07/2014

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

Ilene M. Smith
CHRISTOPHER MYERS & ASSOCIATES
ismith@myers-law.com

Michael D. Conner
SPITZER HERRIMAN STEPHENSON HOLDEREAD CONNER & PERSINGER LLP
mconner@shshlaw.com

Kyle C. Persinger
SPITZER HERRIMAN STEPHENSON HOLDEREAD MUSSER & CONNER LLP
kpersinger@shshlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Michael Roy Morow
STEPHENSON MOROW & SEMLER
mmorow@stephlaw.com